IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHERRIE ESQUIVEL,<br><br>Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner of the Social Security Administration[1],<br><br>Defendant. | MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER<br><br>Case No. 2:12-cv-83<br><br>Magistrate Judge Brooke Wells |

All parties in this case have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[2]

Plaintiff Sherrie Esquivel ("Plaintiff") seeks judicial review of the determination of the Commissioner of the Social Security Administration which denied her application for Supplemental Security Income. After careful consideration of the written briefs and the administrative record, the Court has determined that oral argument is unnecessary and issues the following Memorandum Decision and Order REVERSING and REMANDING the decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin ("Commissioner") became the Acting Commissioner of the Social Security Administration. Accordingly, she has been automatically substituted for Michael J. Astrue as the defendant in this action. See 42 U.S.C. §405(g)("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); F.R.C.P. 25(d)("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise").

[2] See 28 U.S.C. §636(c); F.R.CP. 73, docket no. 10.

## BACKGROUND

Plaintiff, Ms. Esquivel, who was born on April 17, 1978[3], filed an SSI application on November 25, 2008, alleging disability beginning June 20, 2007.[4]  At the hearing before the ALJ, Plaintiff amended the alleged date of onset of disability to November 28, 2008.[5]

Plaintiff contends she is disabled due to a combination of mental and physical impairments, including hypothyroidism following thyroidectomy and radioiodine ablation for papillary thyroid cancer; degenerative disc disease of lumbar spine; obesity; major depressive disorder; cognitive disorder NOS; and somatoform disorder.[6]  Plaintiff's claim was initially denied on March 12, 2009, and upon reconsideration on June 3, 2009.[7]  A hearing before an Administrative Law Judge ("ALJ") was held on June 18, 2010 in Salt Lake City, Utah.[8]  On July 9, 2010, the ALJ issued a written decision denying Plaintiff's claims for benefits.[9]  Plaintiff then appealed the denial to the Social Security Appeals Counsel, which denied her appeal.  Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal pursuant to 42 U.S.C. § 405(g).[10]

In the ALJ's decision, the ALJ found at Step One of the required sequential evaluation process[11] that Plaintiff had not engaged in substantial gainful activity since November 25, 2008,

---

[3] Administrative Record, docket no. 7  [hereinafter referred to as "Tr."] at 13.

[4] Tr. at 31.

[5] Tr. at 31, 47.

[6] Tr. at 33.

[7] Tr. at 31.

[8] Id.

[9] Tr. at  31-39.

[10] See Doyal v. Barnhart, 331 F. 758, 759 (10th Cir. 2003).

[11] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step sequential evaluation process for determining if a claimant is disabled).

the application date.[12]  At Step Two, the ALJ found that the Plaintiff's severe impairments were

"hypothyroidism, following thyroidectomy and radioiodine ablation for papillary thyroid cancer;

degenerative disc disease of the lumbar spine; obesity; Major Depressive Disorder; Cognitive

Disorder NOS; and Somatoform Disorder (20 CFR 416.920(c))."[13]  At Step Three, the ALJ

found that the Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments contained within the regulations.[14]

    Next, the ALJ found that Plaintiff

> has the residual to perform light work…except she can occasionally balance,
> stoop, crouch, kneel, crawl, and climb ramps and stairs; she can never climb
> ladders, ropes or scaffolds; she can tolerate no more than occasional exposure to
> vibrations and to hazards such as machinery and unprotected heights, due to pain,
> side effects of medications and mental impairments she can only make simple
> work-related judgments and decisions; can understand, remember, and carry out
> only sort and simply instructions, and can deal with only occasional changes in
> routine work settings.[15]

    As to the medical opinions rendered in making the RFC determination, the ALJ discussed

some treatment notes[16] and the opinion of Dr. Hall, Plaintiff's treating physician, as well as those

of the reviewing agency medical experts and other consultants.  Specifically, the ALJ discussed

the April 19, 2010 pre-prepared check-box format questionnaire completed by Dr. Hall that

detailed Plaintiff's limitations and functional capacity.  As the ALJ noted, Dr. Hall opined:

> [Plaintiff's] pain level is severe enough to interfere with her attention and
> concentration constantly. He also said she could stand and walk 2 hours a day, 15
> minutes at a time and sit for 3 hours per 8-hour day, 15 minutes at a time.  He also
> opined that she would need to take unscheduled 15-minute breaks, she could

---

[12] Tr. at 33.

[13] Id.

[14] Tr. at 34.

[15] Tr. at 34-35.

[16] Tr. at 33, 36, 37.

never lift any amount of weight and use of her hands and fingers was restricted to 50% of the day.[17]

Next, the ALJ made the following determination with regard to Dr. Hall's opinion:

> There is no credible evidence to support these limitations, which appear to be based almost totally on the claimant's allegations.  There is nothing in the treatment records other than the claimant's allegations to support these restrictions.  There is no evidence to suggest that the claimant cannot lift anything or that she has any problems that would limit the use of her hands.  With these assessments so far removed from the evidence, it follows that the reliability of the rest of the doctor's opinion is compromised as well.  I do not give this assessment significant weight.[18]

The ALJ's opinion then went on to briefly describe the assessments of the reviewing agency medical experts who "opined Plaintiff was capable of light work."[19]  Although the ALJ did not provide the specific amount of weight that he gave these assessments, he did say "[t]hese assessments appear to be reasonably supported by the evidence in the record."[20]   Lastly, the ALJ discussed the opinions of reviewing agency psychologists, but did not specifically assign a weight to these opinions which basically opined that claimant's was capable of working and that Plaintiff's complaints lacked credibility.[21]

At Step Four, the ALJ found Plaintiff was capable of performing her past relevant work as a phone researcher and cashier II.[22]  Also, in the alternative, at Step Five the ALJ found "considering the claimant's age, education, work experience and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant

---

[17] Tr. at 37.

[18] Id.

[19] Id.

[20] Id.

[21] Id.

[22] Tr. at 38.

also can perform."[23]  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the

Social Security Act.[24]

## ANALYSIS

This Court's review of the ALJ's decision is limited to determining whether his findings

are supported by "substantial evidence" and whether the correct legal standards were applied.[25]

If supported by substantial evidence, the findings are conclusive and must be affirmed.[26]

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[27]  Thus, "[t]he possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's findings from being

supported by substantial evidence."[28]  Moreover, a decision is not based on substantial evidence

"if it is overwhelmed by other evidence in the record."[29]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not

required to discuss all evidence.[30]  In its review, the Court should evaluate the record as a whole,

including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[31]

However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for

that of the ALJ's.[32]  Further, the Court "may not 'displace the agenc[y]'s choice between two

---

[23] Id.

[24] Tr. at 39.

[25] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1993).

[26] Richardson v. Perales, 402 U.S. 389, 401 (1981).

[27] Clifton v. Chater, 79 F.3d 1007, 1007 (10th Cir. 1996).

[28] Zolanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).

[29] Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

[30] Id.

[31] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999).

[32] Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo."[33]  Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[34]

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and arguments.  The Court deems oral argument to be unnecessary, and finds as follows:

## DISCUSSION

In her appeal, Plaintiff raises five issues:  (1) did the ALJ err in improperly rejecting the opinions of the claimant's treating and examining medical providers; (2) did the ALJ err in improperly rejecting the claimant's own subjective complaints; (3) did the ALJ err in failing to conduct a proper step four assessment; (4) did the ALJ err in failing to meet his step five burden to identify jobs available in significant numbers, consistent with Ms. Esquivel's specific functional limitations; (5) does new evidence submitted to the Appeals Counsel warrant a remand

After considering these issues and upon consideration of the record, the Court finds issue one (1) to be dispositive and for the reasons set forth below warrants remand.  Therefore, because Plaintiff's other arguments may be affected by the determination on remand, the Court will not address them and therefore limits its discussion to whether the ALJ properly addressed the opinions of Plaintiff's treating and examining medical providers.

---

[33] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).

[34] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

1.      **Treating and Examining Medical Providers**

In support of her claim that the Commissioner's decision should be reversed and remanded, Plaintiff argues that the ALJ erred by improperly rejecting the opinion of her treating physician, Dr. Richard Hall.  Specifically, Plaintiff argues that the ALJ improperly "engaged in a wholesale rejection of all of the doctor's assessed limitations because he could not ascertain the basis for the limitations regarding lifting and use of the hands."  Therefore, Plaintiff argues because the ALJ's rejection of Dr. Hall's opinions was apparently based upon the lack of information in the record with regard to the Plaintiff's ability to lift and use her hands the ALJ had an obligation to re-contact Dr. Hall to gain additional information.  Plaintiff further argues the ALJ's failed to provide specific, legitimate reasons for rejecting Dr. Hall's opinion.

On the other hand, Defendant argues the ALJ thoroughly discussed this opinion and reasonably found it was unsupported.  Defendant further argues it was proper for the ALJ to reject Dr. Hall's opinion because his opinion was unsupported by the objective evidence and based mainly on Plaintiff's complaints.  Lastly, Defendant argues that the ALJ had no duty to re-contact Dr. Hall because the record in this case is sufficient to make a determination of disability.

Generally, "treating source opinions should be given more weight than the views of consulting physicians or those who only review the medical record and never examine the claimant."[35]  As the 10th Circuit has recognized:

> [t]he treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.[36]

---

[35] Daniell v. Astrue, 384 Fed App'x 798, 803 (10th Cir. 2010)(citing Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

[36] Id. at 803-804 (citing Robinson at 1084).

7

Moreover, in the 10th Circuit, "[t]he ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence.'"[37]  Further,

> [e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 404.1527]. Those factors are: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons…for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  *If the ALJ rejects the opinion completely, he [or she] must give specific, legitimate reasons for doing so.*[38]

In addition, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[39]  However, as the regulations and policy interpretations recognize, there are also times when a treating physician should be recontacted by the ALJ.  "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is

---

[37] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).

[38] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted); see also 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p (emphasis added).

[39] See e.g., Ruthledge v. Apfel, 230 F.3d. 1172, 1174 (10th Cir. 2000); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

required to recontact a medical source, including a treating physician to determine if additional needed information is readily available."[40]

Lastly, "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*"[41]

Here, Dr. Hall began treating Plaintiff in at least 2005, more than five years prior to the administrative hearing.[42]  Although it appears that the Administrative Records only contains records from Dr. Hall beginning in December 2007 and continuing through 2010, during that time Plaintiff was seen and examined by Dr. Hall approximately twelve times.[43] Dr. Hall treated Plaintiff for issues related to thyroid cancer and depression, but a majority of his treatment related to Plaintiff's complaints of back pain.  For these complaints, Dr. Hall examined the Plaintiff, ordered at least one MRI and also prescribed pain medication.[44]  Thus, the Administrative Record illustrates that Dr. Hall and Plaintiff had a treatment relationship that was longstanding and continuous.

In spite of this, the ALJ rejected Dr. Hall's opinion and did not give any medical opinion "controlling weight."  Yet, it does appear that the ALJ gave more weight to the opinions of the

---

[40] Daniell, at 803 (internal citations omitted); see also SSR 96-5P, 1996 WL 374183, at *6 (S.S.A. July 2, 1996)("…if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis for the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.);

[41] Langley at 1121 (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("holding [The 10th Circuit] held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's care is not a good reason to reject his opinion as a treating physician.")

[42] See Tr. at 382.

[43] See Tr. 282, 284-285, 286, 288-289, 290, 292, 372-373, 369-371, 374-375, 376, 377.

[44] Id.

reviewing agency medical experts' than the opinion of Dr. Hall.[45]   However, in rejecting Dr. Hall's opinion, the ALJ did not point to specific areas on the record where Dr. Hall's opinion was contradicted.   Rather, as the main reason for rejecting Dr. Hall's opinions, the ALJ focuses on the section of the pre-printed questionnaire Dr. Hall completed regarding Plaintiff's lifting and hand restrictions.  The ALJ concluded that "there is no evidence to suggest that the claimant cannot lift anything or that she has any problems that would limit the use of her hands."  Further, the ALJ noted that Dr. Hall's opinions "appear to be based almost totally on the claimant's allegations."[46]  Without reweighing the evidence, the Court finds the ALJ's conclusions as to Dr. Hall to be in error because the ALJ's conclusion is improperly based upon the ALJ's "…own credibility judgments, speculation or lay opinion."[47] Specifically, the ALJ concluded that because Dr. Hall's treatment notes lack any discussion of Plaintiff's limitations or restrictions with regard to lifting or use of her hands, and because Dr. Hall filled in the section on the questionnaire related to lifting restrictions and use of Plaintiff's hands that his entire opinion is suspect.   However, Plaintiff's own testimony and the ALJ's opinion seem to bring this conclusion into question.  Before discussing Dr. Hall's opinion, the ALJ found "[Plaintiff] was present when Dr. Hall filled out the form and he asked Plaintiff some questions, "*but he was "going off what he seen me for."*[48] Moreover, at the hearing, the Plaintiff, through her attorney testified that Dr. Hall had told Plaintiff to "try and limit the amount of weight she was lifting."[49] Thus, the Court finds that the ALJ's rejection of Dr. Hall's opinion is based upon improper credibility judgment and speculation.

---

[45] E.g. Tr. 37 ("These assessments appear to be reasonably supported by the evidence of record.")

[46] Tr. at 37.

[47] Langley, 373 F.3d at 1121.

[48] Tr. at 36 (emphasis added).

[49] Tr. at 51.

Lastly, the Court agrees with Plaintiff that the lack of evidence in the treatment notes with regard to lifting restrictions should have prompted the ALJ to seek additional information from Dr. Hall before rejecting his opinion.  "At the least, if the ALJ believed that the matter was open to question, he had an obligation under the applicable regulations to obtain additional information from [the treating physician] before rejecting the report outright."[50]  Here, there is evidence that Dr. Hall may have told Plaintiff to limit her lifting and that Dr. Hall in filling out the questionnaire was "going off what he saw [Plaintiff] for."  However, Dr. Hall's treatment notes are devoid of any discussion with regard to lifting or use of Plaintiff's hands. Considering the longstanding relationship Plaintiff had with Dr. Hall and the view that treating physicians opinions ought to be afforded great weight and Dr. Hall opining as to Plaintiff's disability, the Court concludes that in this case, the ALJ had an obligation to contact Dr. Hall in order to clarify and examine the reasons for Dr. Hall's opinion more closely before discounting the opinion in its entirety in favor of the opinions of the reviewing agency physicians who at most examined Plaintiff on a one time or very limited basis.

## CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiff's arguments regarding the ALJ's rejection of the Plaintiff's treating and examining physician has merit and warrants remand for further proceedings as set forth herein.  Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

---

[50] McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).

DATED this 13 August 2013.

Brooke C. Wells
United States Magistrate Judge